IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE INSURANCE CO., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DENNIS GLYNN AND | : | NO. 02-3740 |
| EDWARD KAISER | : | |
| | : | |

**MEMORANDUM**

Giles, C.J.                                                                                                         May 14, 2003

**I.   INTRODUCTION**

This matter arises from a controversy over the provisions of a homeowners' insurance policy issued by Nationwide Insurance Company ("Nationwide") to Dennis Glynn, a defendant in an underlying state action brought by Edward Kaiser. Pursuant to the personal liability provisions of his homeowners' policy, Glynn submitted a claim requesting that Nationwide provide him a legal defense and indemnification in the state case. The claim was rejected. Nationwide then instituted this declaratory judgment action seeking a declaration that it owes no duty to defend or indemnify Glynn in the action brought by Kaiser. Glynn counterclaimed seeking a declaration that Nationwide must defend and indemnify him. This court has jurisdiction over the matter based upon diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.[1]

Before this court are Nationwide's Motion for Summary Judgment, Glynn's Cross-Motion for Partial Summary Judgment on the issue of Nationwide's duty to provide a defense,

---

[1] Nationwide is a corporation organized under the laws of Ohio with its principal place of business located in Columbus, Ohio. Glynn and Kaiser reside in Philadelphia, Pennsylvania. The amount in controversy exceeds the sum of seventy five thousand dollars ($75,000).

1

and Kaiser's Cross-Motion for Summary Judgment, all pursuant to Fed. R. Civ. P. 56.  For the reasons set forth below, the court finds that Nationwide's Motion for Summary Judgment must be denied, that Glynn's Motion for Partial Summary Judgment must be granted, and that Kaiser's Cross-Motion for Summary Judgment must also be granted.

## II.   BACKGROUND

On the evening of December 23, 1999, Kaiser was a patron at Chickie and Pete's Café ("Chickie's"), where he socialized with friends.  (Kaiser's First Am. Compl. at ¶ 16.)  There, he suffered bodily injury due to a physical altercation between him and five other men, also patrons of Chickie's.  (Id.)  Kaiser brought suit in the Philadelphia Court of Common Pleas, Kaiser v. Rose, et al., No. 2113, March Term, against Glynn and the others involved, claiming that he was suddenly and without warning physically attacked by assailants that were intoxicated, rowdy, violent and dangerous.

Count III of the Kaiser complaint avers that during the fracas Glynn, and four other defendants, committed assault and battery by placing him in apprehension of an immediate battery (Id. at ¶ 40); intentionally inflicting harm upon him with offensive touching and engaging in other offensive conduct without provocation or legal justification to do so (Id. at ¶ 41); intentionally and forcibly stabbing him in the head and facial area with a glass pitcher and knocking him to the ground by throwing punches at him after he was struck by one of his attackers (Id. at ¶ 42); and forcibly kicking him while he was on the ground after being struck (Id.).  These actions, Kaiser claims, caused him serious and permanent personal injury.  (Id. )  In Count III are two paragraphs wherein Kaiser alleges that as a result of the negligence, carelessness and reckless indifference of the defendants he sustained the same injuries.  (Id. at ¶¶

43-44.)

At the time of the incident, Glynn was a named insured under a Nationwide homeowners' policy, number 58 37 HO 792785.[2] Accordingly, he submitted notice of the Kaiser v. Rose, et al., action to the carrier seeking a defense under this policy. (Def. Glynn's Stmt. of Facts Supp. Summ. J. at ¶ 4.) In response, Nationwide issued a "reservation of rights"[3] letter dated February 15, 2002. It advised Glynn that it would undertake a full investigation into the matter, subject to a reservation of its rights with respect to the policy and applicable law, that he had an uninsured interest in the litigation, and that it would not appoint a law firm to represent him. (Id. at ¶ 5; Def. Glynn's Mem. Supp. Partial Summ. J. Ex. A.2.) Nationwide's Declaratory Judgment action soon followed. (Id. at ¶ 5; Def. Glynn's Mem. Supp. Partial Summ. J. Ex. A.2.)

Nationwide's complaint for declaratory judgment avers that denial of coverage was appropriate because the exclusion provisions of Glynn's homeowners' policy were triggered by the factual allegations of the Kaiser complaint. (Nationwide's Compl. Action for Decl. J. at 4-5.) Specifically, Nationwide maintains that the factual allegations of the Kaiser complaint assert that Glynn acted with an intent to cause the injuries that Kaiser suffered and that he acted knowing that such injuries were substantially certain to result from his conduct. (Nationwide's Compl. Action for Decl. J. at ¶ 21; Nationwide's Mem. Supp. Sum. J. at 15.) Nationwide asserts that the

---

[2]The coverage period, under the policy at issue, commenced on December 23, 1999 and ended December 23, 2000.

[3]According to Nationwide's reservation of rights-claim letter of February 15, 2002, the phrase "reservation of rights" means that the insured's rights, and those of Nationwide under the policy and applicable law, are fully reserved and that any action taken during the course of Nationwide's investigation and evaluation, including Nationwide's furnishing of a defense shall not be interpreted as a waiver or an estoppel to assert any such right. (Def. Glynn's Mem. Supp. Partial Summ. J. Ex. A.2.)

Kaiser complaint does not describe an "accident," but rather an intentional assault and battery that clearly falls within the scope of the policy's exclusion for bodily injury. (Nationwide's Compl. Action for Decl. J. at ¶17-19; Nationwide's Mem. Supp. Sum. J. at 11.) The pertinent personal liability provisions from Glynn's Homeowners' Policy are excerpted below:

> **Section II–Liability Coverages**
> **Coverage E–Personal Liability**
> We will pay damages the insured is legally obligated to pay due to an occurrence.
>
> We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

(Nationwide's Mem. Supp. Summ. J. Ex. B. at 12.)

The policy defines "occurrence" as:

> **Amendatory Endorsement**
> **Definitions**
> Occurrence means bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition. The occurrence must be during the policy period.

(Nationwide's Mem. Supp. Summ. J. Ex. B. at 1.)

The exclusion provisions from Glynn's policy read:

> **Amendatory Endorsement**
> **Section I–Exclusions**
> Intentional or criminal acts, meaning a loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts; or is the intended result from such acts. Such an act excludes coverage for all insureds.

(Nationwide's Mem. Supp. Summ. J. Ex. B. at 2.)

> **Section II–Exclusions**
> **Coverage E–Personal Liability, and Coverage F–Medical Payments to Others do not apply to bodily injury or property damage**:
> a.  by an act intending to cause harm done by or at the direction of any insured.

(Nationwide's Mem. Supp. Summ. J. Ex. B. at 13.)

Nationwide argues that the factual allegations of the state complaint do not describe an "occurrence" or an "accident" as required by the policy, but obviously intentional acts.

On the other hand, Glynn argues that Kaiser's complaint alleges that he was intoxicated and, if this condition were proven, it would negate his ability to have committed an intentional tort, thereby causing any injury to be the result of negligence.  (Glynn's Countercl. for Decl. J. at ¶ 10.)  Further, Glynn asserts that at no time did he intend to harm Kaiser and that he was never criminally charged, tried or convicted of any criminal activity as it might relate to conduct described in the Kaiser complaint. (Glynn's Countercl. for Decl. J. at ¶ 8.)  Accordingly, Glynn seeks a finding that the exclusion provisions of his homeowners' policy are not applicable and that Nationwide is obligated to provide a defense as well as pay up to the limit of the policy for any damages awarded to Kaiser for which Glynn might be held liable. (Glynn's Countercl. for Decl. J. at ¶ 16.)

Similarly, Kaiser's Summary Judgment Motion argues that Glynn was intoxicated at the time of the alleged assault, a condition which precluded him from forming intent to harm and, therefore, the injuries to Kaiser could not have been intended.  Alternatively, Kaiser submits that his state complaint sets forth a cause of action sounding in negligence, thereby, an occurrence within the meaning of the policy.

### III.     DISCUSSION

Nationwide contends that the factual allegations of the Kaiser complaint cannot be read to describe anything other than an intentional assault and battery, and conduct that cannot, by any stretch of the imagination, be considered accidental or even reckless. (Nationwide's Mem. Supp. Summ. J. at 11.) Further, Nationwide argues that Kaiser's broad characterizations of negligence cannot trigger a defense obligation since the factual allegations of the complaint inescapably describe intentional misconduct. Id. While the factual allegations of the Kaiser complaint could be read to describe intentional conduct, there is potential for the described conduct to be construed as negligent. Therefore, the court concludes that Nationwide's declination of Glynn's claim for a defense and indemnification was improper.

Under Pennsylvania law, an insurer's obligation to provide a legal defense to its insured hinges upon whether the claims asserted in the complaint potentially come within the policy's coverage. Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985); T.H.E. Ins. Co. v. DeMutis, No. CIV.A.98-1683, 1999 WL 83933, at *1 (E.D. Pa. Feb. 17, 1999); Nationwide Mut. Ins. Co. v. Sedicum, No. CIV.A.93-2996, 1993 WL 544414, at *1 (E.D. Pa. Dec. 27, 1993). An insurer has a duty to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy. Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. Ct. 1997). The insurer will have a duty to defend, particularly if the factual allegations of the complaint, when taken as true and construed liberally, state a claim to which the policy potentially applies. Sphere Drake v. 101 Variety, Inc., 35 F. Supp.2d 421, 427 (E.D. Pa. 1999). The insurer must defend unless and until it can narrow the claim to recovery that the policy does not cover. Id. Even if the allegations to which the policy

potentially applies are found to be groundless, false or fraudulent, an insurer's duty to defend does not cease. Britamco Underwriters, Inc. v. O'Hagan, No. CIV.A.94-1160, 1994 WL 477551, at *2 (E.D. Pa. Sept. 2, 1994). "The cases are legion which hold that the obligation to defend is triggered if the underlying complaint avers any facts that potentially could support a recovery under the policy." TIG v. Nobel Learning, NO. CIV.A.01-4708, 2002 WL 1340332, at *5 (E.D. Pa. Jun. 18, 2002) (quoting USX Corp. v. Adriatic Insurance Co., 99 F. Supp.2d 593, 611 (W.D. Pa. 2000)). Accordingly, if some allegations potentially come within the terms of coverage and some do not, the insurer is obligated to defend its insured on all claims. Nationwide Mut. Ins. Co., v. Yaeger, No. CIV.A.93-3024, 1994 WL 447405, at *1 (E.D. Pa. Aug. 19, 1994).

The state action complaint factually alleges that Glynn intentionally struck Kaiser without provocation or legal justification, stabbed him in the head and facial area with a glass pitcher, knocking him to the ground by throwing punches at him, and kicking him while on the ground. (Kaiser's First Am. Compl. at ¶¶ 40-42.) However, in the alternative, the Kaiser complaint alleges that Glynn injured him by negligent conduct. As such, the complaint potentially comes within the coverage of Glynn's policy. See Sedicum, 1993 WL 544414, at *1. Without a factual determination that Glynn's conduct was intentional, the court cannot conclude that Nationwide is not obligated to indemnify or defend him. Nationwide Ins. Co. v. Burnier, No. CIV.A.91-2017, 1991 WL 231573, at *2 (E.D. Pa. Oct. 30, 1991); see also Sedicum, 1993 WL 544414, at *1 (holding that because allegations of negligent and intentional behavior were alleged in the complaint the court could not, at the declaratory judgment action phase of litigation, make a determination as to which allegations were correct ).

Glynn and Kaiser both argue in their Cross-Motions for Summary Judgment that at the time of the incident, Glynn was intoxicated and, that intoxication negates intention. They assert that Nationwide has not shown by its Motion for Summary Judgment that Glynn possessed the intent to injure Kaiser, or that his conduct constituted criminal acts. Glynn and Kaiser rely on two cases <u>Stidham v. Millvale Sportsmen's Club</u>, 618 A.2d 945 (Pa. Super. Ct. 1992) and <u>Nationwide Mut. Ins. Co. v. Hassinger</u>, 473 A.2d 171 (Pa. Super. Ct. 1984), to support their contention that Glynn's intoxicated state prevented the formulation of an intent to injure Kaiser, and therefore, Glynn's conduct should be seen as negligence. Their reliance on these cases, however, is misplaced. While intoxication and the degree of intoxication may be considered by a jury in deciding whether an act is intentional, mere intoxication does not automatically negate intent.

In <u>Stidham</u>, Robert McLaughlin, shot and killed Brett Stidham at the Plain View Inn, a bar in which McLaughlin drank alcohol before the shooting. Mclaughlin, had a history of suffering from alcoholic amnestic syndrome, also known as alcoholic blackouts, when he drank alcoholic beverages to excess. During these periods of extreme intoxication he had no conscious awareness of his actions and no memory of events. On the day of the shooting, McLaughlin had previously spent the day with friends skeet shooting and consuming alcohol at the Millvale Sportsmen's Club. After leaving the Millvale Club he drove to the Plane View Inn where he consumed more alcohol. At the Plain View Inn, McLaughlin drank two shots of Jim Bean liquor and two draft beers. Later, he left the bar went to his truck and retrieved one of his skeet guns reentered the bar and shot and killed Stidham. Following the shooting, McLaughlin had no recollection of using his gun or awareness of having participated in such a shooting. McLaughlin

8

subsequently, pled guilty to the crimes of third degree murder and aggravated assault. The Administratrix of the Stidham Estate filed a wrongful suit, alleging negligent, careless, reckless and/or willful conduct. McLaughlin's insurance carrier, Aetna, refused to provide coverage and a defense on the basis that the guilty plea was conclusive proof of his intent to injure Stidham. The Stidham court concluded that Aetna had a duty to defend and indemnify because McLaughlin's guilty plea did not unequivocally resolve the issue of intent. It held that McLauglin's guilty plea remained ambiguous enough to have no conclusive effect on a subsequent civil action.

     In Hassinger, Richard L. Harvey was struck and killed by a motor vehicle owned and operated by an intoxicated David L. Hassinger. On the day of the incident, Harvey was walking through a parking lot when Hassinger's car jumped the curb, traveled across the sidewalk, and hit Harvey causing serious bodily injury, which resulted in his death. After striking Harvey with his vehicle, Hassinger got out of his car and said: "I told you I would get the son-of-a bitch." Mrs. Judy Harvey, as the Administratix of her husband's estate, filed a civil action against Hassinger in the County Court of Common Pleas. Nationwide, the insurance carrier for the vehicle involved, defended Hassinger subject to a reservation of rights. The jury returned a verdict in favor of Mrs. Harvey in the amount of $305,000 dollars. Subsequently, Nationwide brought a declaratory judgment action seeking a declaration that it owed no duty to indemnify Hassinger on the basis that Hassinger acted intentionally in striking Harvey, which triggered an exclusion provision in his policy. In response, Mrs. Harvey and Hassinger both contended that, at the time of the incident, Hassinger was so intoxicated that he was incapable of forming an intent to cause his vehicle to strike and kill Harvey. The petition for a declaratory judgment proceeded to trial.

After hearing the evidence, the jury returned a verdict in favor of Nationwide finding that Hassinger acted intentionally. On appeal, Hassinger and Mrs. Harvey made several arguments to the Pennsylvania Superior Court, alleging that the trial judge erred, including <u>inter</u> <u>alia</u> that the trial judge improperly instructed the jury concerning the legal standards for determining intentional conduct. The trial judge's jury instructions were, in pertinent part, as follows:

> The actor desired to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it . . . . If the actor knows that the consequences are certain, or substantially certain to result from his act and still goes ahead, he is treated by the laws as if he had in fact desired to produce the result . . . . And if you find that the defendant, Mr. Hassinger, did have the intent to harm or kill any individual–not necessarily Mr. Harvey– then that is sufficient to find that that was his intention and the he did act intentionally.

<u>Hassinger</u>, 473 A.2d at 175. Further, the trial judge instructed the jury that the intoxicants imbibed by Hassinger were to be considered in determining whether he had the ability to formulate an intent. The jury was also instructed that "if one does not have the ability to formulate an intent, the resulting act is not intentional." <u>Id.</u> The appellate court concluded that the charge was a fair statement of Pennsylvania law. While voluntary intoxication "may so cloud the mind as to deprive it of the power of pre-meditation and deliberation, it will not prevent the formation of the general intent necessary for the commission of an assault and battery." <u>Esmond v. Liscio</u>, 224 A.2d 793, 797 (Pa. Super. Ct. 1966).

Viewing the four corners of the complaint, factual determinations remain regarding intent, which is clearly is an issue for the jury in the underlying state action to resolve. Hence, Nationwide has failed to meet its burden to demonstrate that the exclusion provisions of the policy apply. See <u>Yaeger</u>, 1994 WL 447405, at *1.

The duty to indemnify is a separate and distinct obligation from that of the duty to defend.

C.H. Heist Cribe Corp. v. American Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981). The duty to indemnify is narrower than the duty to defend. Linn, 766 F.2d at 766. An obligation to indemnify arises from the ultimate basis for liability in the underlying case. C.H. Heist Cribe Corp., 640 F.2d at 483. An insured will only be indemnified if liability is found for conduct that falls within the scope of the policy, Linn, 766 F.2d at 754. That is an issue that cannot be conclusively resolved here. In Kaiser's state action, the fact finder there could determine that Glynn's actions were intentional or that his conduct was negligent. Therefore, it would be premature to rule on the issue of indemnification. Id. at 483.

V. **CONCLUSION**

For the foregoing reasons, Nationwide's Motion for Summary Judgment is denied, Glynn's Cross-Motion for Partial Summary Judgment is granted, and Kaiser's Cross-Motion for Summary Judgment is granted.

An appropriate order follows.